UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Alfred Schlick, | : | Case No. 1:07CV1908 |
| Plaintiff | : | Judge Dan A. Polster |
| v. | : | Magistrate Judge David S. Perelman |
| Commissioner of Social Security, | : | |
| Defendant | : | **REPORT AND RECOMMENDED DECISION** |

This Court, for the reasons set out hereinafter, has mixed feelings about this action in which the plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) of the defendant's final determination denying the plaintiff's application for an award of supplemental security income (SSI), 42 U.S.C. §1381 et seq. The action is pending decision upon the parties submissions on the merits, pursuant to which the plaintiff seeks entry of final judgment in his favor or, alternatively, an order of remand, and defendant seeks final judgment affirming the decision below.

Plaintiff applied for benefits on September 27, 2002, alleging an onset date of April 1, 2000.[1] In an accompanying Disability Report - Adult the questions "What are the illnesses, injuries or conditions that limit your ability to work?" and "How do your illnesses, injuries or conditions limit

---

[1] Although the plaintiff alleged April 1, 2000 as his onset date, in that same form he stated that he had last worked in 1996. His earnings record showed that he earned $819.00 that year, and had no earnings for 1993 through 1995. It does, however, reflect earnings of $405.00 in 2002, and in his employment history in the Disability Report he stated that he worked part-time as a laborer for a paving company in 2002.

your ability to work?" were answered "Liver disease" and "They make me tired easily and I am always nauseous."

Upon denial of plaintiff's claim on the state agency level hearing de novo before an Administrative Law Judge (hereinafter ALJ) was requested. Evidentiary hearing, at which plaintiff was represented by counsel, was held on April 11, 2005. Also testifying at that proceeding was a vocational expert, Mr. Thomas Nimberger.

At the outset of that hearing plaintiff's counsel advised the ALJ that the previous month the plaintiff had been involved in an automobile accident, as a result of which, it was probable that he would shortly thereafter be undergoing hip replacement surgery.

When asked by the ALJ "When do you think you first became disabled?" the plaintiff responded:

> A. It's been a couple of years. Actually my hip has been bad for going on 2 years. I have a vascular necrosis. This was actually before the car accident, but the surgeon said he wouldn't do any surgery for at least 6 to 8 weeks to see if any complications arose from the car accident.
>
> Q. Um-hum. Well, my question was when, when do you think you first became disabled?
>
> A. Well. I've been tired for years and I mean probably about 2 years.
>
> Q. Well, 2 years ago, that would put us back in April of 2003?
>
> A. Right.
>
> Q. Not earlier?
>
> A. Well, April of 2002, I had an operation on my bladder for cancer and then I was taking that, that year I was taking interferon and other treatments for hepatitis and they, after a few months of that treatment, I broke out in a rash and I was under a lot of stress, and

    so I'd probably say almost 3 years, actually, 2 1/2 years.  I had to stop the treatment. it didn't work out.

  Q. Were you on chemotherapy or radiation therapy after your cancer surgery?

  A. No.

  Q. They got it all?

  A. Yeah.

  Q. That's good.  So let's see, what's wrong?  Let's see.  You had bladder cancer.  You had, you have this hip problem.  What else is wrong with you?

  A.. I have hepatitis C, chronic, and that kind of drains me, it puts me under a lot of stress.  My biggest problem now is my hip that, it makes it hard to get around and get up and down.

  Q. Your lawyer mentioned back problems.

  A. It's sore and that, but it's not—it's mostly my hip.  It's not, my back is not really too bad.  It could be stress from the hip because I'm not, I'm trying to keep my weight off of it and use other parts of my body.

  Q. Um-hum.  And you mentioned anxiety disorder or anxiety.

  A. I'm just under stress.  I just, all these things with me, I'm just going nuts.  I, I want to get this hip done.  This hip replaced and after the car accident, the doctor, like I said, he wanted to delay it.

  Q. So if your physical problems could somehow be waved away, then your psychological problems would go away too?

  A. Basically yeah, yes.

When asked about his ability to stand/walk the plaintiff testified that he was quite limited.  On the subject of whether he had problems sitting the plaintiff stated:

  A. Sometimes but usually no.  Like usually at home, I'm in a

>    recliner and I recline.
>
> Q. How about in a, let's say sitting on a bench, something that doesn't have a back to it?
>
> A. I guess I could sit on a bench. I really don't sit on a bench, so I don't know. I have a recliner at home and I'm usually on that.
>
> Q. How about a chair like the one you're sitting on now?
>
> A. That's, that's fine. I'm taking pain pills and they help, but like I said, you know, I can't be taking them all the time, especially with my liver problem.

The ALJ later returned to the question of whether "Do you have any back problems?," and the plaintiff responded:

> A. Yes, but they're not, it's not severe like my hips. It's not as, I mean, it hurts a little bit to bend and my basic thing is my hip is where all the pain comes from.
>
> Q. Okay. And can you tell me about any other with respect to your hips, and said you told about standing and walking can aggravate it, is there anything else that you can tell us about that aggravates your hip condition?
>
> A. Just, it just hurts all the time. I mean, I don't have to do anything and it hurts.

When questioned as to his physical capabilities the plaintiff stated that he could pick up a 20 pound bag of potatoes, "but it would hurt. I mean it would make me walk a little funny, but I could, I could lift it." He than stated "The hardest part, the hardest thing I do out of the day is getting in and out of the care where I have to bend, that's harder than anything else because you have to swivel. The way my hip is, that's probably the worst thing I do of the day."

Plaintiff's counsel briefly touched on the question of plaintiff's ability to sit, as follows:

> Q. Mr. Schlick, the judge asked about your ability to stand and walk and sit. You said you could sit fine with your medications, but

>      you cannot take them all of the time because of your liver.
>
> A.   The doctor doesn't want me to keep taking them. He just refilled them for me on Friday because I had been off them for a while.

Counsel also touched on the subject of the plaintiff's back:

> Q.   Okay, we also have MR, some MRI evidence concerning your back.  Do you have any back problems?
>
> A.   Yes, but they're not, its not severe like my hips.  It's not as, I mean, it hurts a little to bend and my basic thing is my hips where all the pain come from.

Regarding plaintiff's hip problems, counsel elicited the following from his client:

> Q.   Mr. Schlick, the problems with your hip, your hips, I should say, and your back, when did you first start experiencing those problems?
>
> A.   Basically, I was born with bad hips.  Through my life, I could pop them and move them.  Now, the pain wasn't really like that until probably the last couple years.
>
> Q.   Okay.  I mean, did—
>
> A.   But I didn't seek treatment for it until about a year ago because it just kept to the point like I couldn't even cut the grass.  I had to have a friend come over and cut the grass because it was getting that bad.  And I was living with the pain before that, I was trying, I had other things to deal with.  I was trying to get rid of the hepatitis, you know, at that point that was more important because that's your liver and it really didn't become that bad until probably the last year with my hip, probably 2 years.
>
> Q.   Two years?
>
> A.   I would say about 2 years.
>
> Q.   Okay.  And you mentioned—
>
> A.   I mean, because I remember when I had my friend coming over to cut the grass, I mean, I even used to like to cut the grass, be

5

>   out and doing something.
>
> Q. Okay. And so obviously in the summer?
>
> A. Right. Up to the spring.
>
> Q. To the spring. It was 2004, 2003?
>
> A. 2003.
>
> Q. 2003, okay. Prior to the summer of 2003, did you have any, did you notice that you were limited in doing other kind of activities? You mentioned cutting your grass. Anything else that you found that you were limited in that you used to be able to do that—
>
> A. Not too bad. I mean, I lived with it, but just what I used to do, it would like pop out, it would pop back in place and it was okay, so I don't know what that meant or anything. I just, I don't know what that was all about. It would just pop out and I just thought it was weird and pop back in. And then it finally started to hurt and that's when I , you know, decided to do something about it.

On November 23, 2005 the ALJ entered his decision finding the plaintiff not disabled. Unlike the format this Court usually sees, which concludes with "Findings" representing the rationale of decision, the ALJ entered sixteen "Findings and Reasons."

The fifth of those was with regard to the plaintiff's residual functional capacity, and therein the ALJ held that:

>   5. Mr. Shlick's allegations of the intensity, persistence, and functionally limiting effects of the symptoms produced on and after April 1, 2000, the alleged onset date, by the impairments discussed in Findings #2 and #3 above are sufficiently credible, and sufficiently consistent with the objective medical and other evidence in the case record, to show that, on or after April 1, 2000, the alleged onset date, the symptoms produced by these impairments, severe and not severe, result in a residual functional capacity that allow Mr. Shlick to perform work activities except for the following limits on Mr. Shlick's ability to work:

> Mr. Shlick cannot lift or carry more than 20 pounds occasionally or 10 pounds frequently.
> Mr. Shlick cannot stand for longer than 30 minutes at a time without taking a break from standing.
> Mr. Shlick cannot walk for longer than 15 minutes at a time without taking a break from walking.
> Mr. Shlick cannot climb a ladder, rope, or scaffold.
> Mr. Shlick cannot climb stairs or ramps more than occasionally.
> Mr. Shlick cannot bend, kneel, crouch, squat, stoop, or crawl.
> Mr. Shlick cannot do any work that requires high or strict production quotas.
> Mr. Shlick cannot do any work that requires frequent changes of the work environment.
>
> In reaching this conclusion, and the conclusions stated in Findings #6 and #7 below, I considered Mr. Shlick's testimony during the April 11, 2005 hearing. Mr. Shlick testified that he could lift and carry as much as 20 pounds but that he would "walk funny," that he could lift and carry up to 10 pounds with no problem, that he could stand for up to 15-30 minutes without a break from standing, that he could walk for up to 15 minutes without a break from walking, <u>that he could usually sit for any length of time without a problem</u>, that he could not bend, kneel, crouch, stoop, or crawl, that he could climb steps but that it "hurts," that his arms and hands were "OK," that he would have a problem using foot pedals except that he has no problem using the accelerator when driving a car because that involves only the right foot, that he has no problems being around people, that he can handle complex situations and learn new ones, that dealing with coworkers was not a problem, that working with a "boss" was not a problem since he started becoming a churchgoer, and he generally had no problem staying focused on what he was doing. He added that his hip (he used the singular, not the plural) hurts all the time, even when he was not doing anything. (Emphasis added.)

Although the ALJ basically found the plaintiff capable of light work activities, given the plaintiff's age, under 50 during the relevant period, and high school education under the standards of the Social Security "grids" he would have to be incapable of sedentary work in order to be deemed

disabled.  The jobs the ALJ found the plaintiff capable of performing were in fact at the sedentary level.

In the sixth the ALJ stated, in pertinent part:

> During the April 11, 2005 hearing, I considered adding the following additional limitation to the residual functional capacity stated in Finding #5 above: "Mr. Shlick cannot sit for longer than a total, in the aggregate, of 4 hours per 8-hour workday." However, on this record, I cannot make that revision, or any other, because there is insufficient medical evidence in the record to explain, justify or support any such revision, and because it is contradicted by Mr. Shlick's testimony during the April 11, 2005 hearing.[7]
>
> _____
> [7]At the end of the April 11, 2005 hearing, I agreed to keep the record open for an additional 30 days so that Mr. Shlick's attorney could submit more evidence.  I considered all of the evidence that Mr. Shlick's attorney submitted after the hearing.

The evidence alluded to it footnote seven included treatment records from MetroHealth Medical Center from May 2003 through January 2005, treatment records from Euclid Hospital from March 2005, patient records from two treating physicians, and physical capacity statements from two treating physicians, Dr. Michael Epping date October 26, 2004 and Dr. Kamel Sahlani dated April 8, 2005.

The plaintiff sought review of the ALJ's decision by the Appeals Council, and in doing so submitted additional evidence, that being records from the Hillcrest Hospital covering the period May 20, 2005 to December 2, 2005 reflecting that the plaintiff had replacement of both hips.  On July 19, 2006 the Appeals Council denied review, issuing a standard form notice, which included the statement "In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.  We found that this information does not provide a basis for changing the Administrative Law Judge's decision."

On this appeal plaintiff advances the following four issues:

    I. WHETHER THE ALJ'S FINDING THAT THE PLAINTIFF RETAINS THE RESIDUAL FUNCTIONAL CAPACITY FOR A RANGE OF SEDENTARY WORK IS SUPPORTED BY SUBSTANTIAL EVIDENCE IN LIGHT OF EVIDENCE FROM PLAINTIFF'S TREATING PHYSICIANS.

    II. WHETHER NEW AND MATERIAL EVIDENCE OF PLAINTIFF'S HIP IMPAIRMENT WARRANTS REMAND.

    III. WHETHER THE ALJ ERRED IN FINDING THAT THE REQUIREMENTS OF LISTING 1.02 WERE NOT MET OR EQUALED.

    IV. WHETHER THE ALJ IMPERMISSIBLY ACTED BEYOND HIS SCOPE AS A FINDER OF FACT.

Taking up first the question of whether the evidence of the plaintiff's hip replacement calls for remand, 42 U.S.C. §405(g) provides, in pertinent part, that "The court may. . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

Defendant argues that neither of the two conditions is met in this case.

This Court finds that defendant is correct with regard to requirement that the plaintiff demonstrate good cause for the failure to present the evidence in question to the ALJ in a timely fashion.

At the conclusion of the evidentiary hearing held on April 11, 2005 the ALJ agreed to hold the record open for thirty days to permit counsel to submit additional medical evidence and stated "if 30 days turns out not to be enough, let me know before the first 30 days are up and explain what's going on and why you think you need whatever you're asking for at that point."

The plaintiff underwent replacement of his left hip on June 15, 2005, and while the exact date

of his right hip replacement is not clear it appears that it was between November 22nd to November 30th, and obviously must have been scheduled prior thereto.

Plaintiff's counsel has offered no reasonable explanation as to why the evidence relating to the plaintiff's hip replacements was not presented to the ALJ between April 11, 2005 and November 23, 2005, when the ALJ entered his decision. Absent such an explanation this Court cannot find that remand is permissible pursuant to the second prong of §405(g), and need not consider whether the first—is the evidence new and material—is satisfied.

This Court also finds the argument that the ALJ erred in not finding Listing 1.02 to be met or equaled to be without merit.

That Listing requires, in part, evidence of "inability to ambulate effectively." The evidence relied upon in plaintiff's brief is that "Following his bilateral hip replacements, evidence on record proves that he required the use of two crutches to ambulate (Tr. 387). Therefore, Mr. Shick [sic] does not have an ability to ambulate effectively as it is defined above and the requirements of Listing 1.02(A) are met." Considering that this evidence was not before the ALJ, being part of the record first presented to the Appeals council, the ALJ can hardly be faulted for not taking it into account vis-a-vis Listing 1:02.

This brings us to the somewhat related first and fourth issues raised by the plaintiff, and the aspect of the ALJ's decision that troubles this Court.

This case represents one more of an increasing number that this Court is encountering in which the ALJ declines to avail himself/herself of the services of a qualified medical expert, instead taking it upon himself/herself to interpret the objective medical evidence and reach a conclusion as to the claimant's residual functional capacity based upon that interpretation. While the ALJ is the

trier of the facts, charged with the responsibility of weighing the evidence, that function does not mean that he/she possesses the medical expertise required to interpret what is often complex medical evidence.

In this Court's opinion, the ALJ doing so in this case cannot be upheld.

Of particular concern to this Court is the ALJ's determination that the plaintiff does not have any limitations as regards his ability to sit for an eight hour workday, which is contrary to the opinions expressed by the plaintiff's treating physicians, Drs. Eppig and Sahlani, in physical capacity forms completed by them in October 2004 and April 2005. Dr. Eppig attributed the plaintiff's limitations for sitting to "a vascular necrosis of both hips," whereas Dr. Sahlani appears to have assigned "pain in the back [with] radiation to legs" as the condition limiting the plaintiff's ability to sit for more than four hours.

With regard to both physicians the ALJ stated "With respect to Mr. Schlick's abilities to lift, carry, stand, walk, or sit, or work without more than the usual morning, lunch and afternoon breaks, I gave his opinions no weight because they are contrary to the weight of the evidence, including Mr. Schlick's testimony during the April 11, 2005 hearing."

In this Court's opinion, simply stating that the doctor's opinions are "contrary to the weight of the evidence" including the plaintiff's testimony is not good enough. In what respect are the doctor's opinions contrary to the weight of the evidence? In what manner are they inconsistent with the plaintiff's testimony? The ALJ's conclusory statements shed no light on the answers to these questions.

If the reference to the plaintiff's testimony relates to the statement in the ALJ's opinion that the plaintiff testified "that he could usually sit for any length of time without a problem," that

11

statement is, in this Court's opinion, simply inaccurate. This Court does not believe that the plaintiff's ambiguous answer to the question whether he was able to sit in a chair such as he was using at the hearing supports the conclusion that he could sit for extended periods during a work day.

Given the clear medical evidence that by at least August of 2004 a vascular necrosis of both hips had been confirmed by an MRI scan, this Court believes that testimony of a medical expert was called for on the related subjects of the plaintiff's residual functional capacity and a basis in the objective medical evidence for the plaintiff's subjective complaints. This calls for remand pursuant to the fourth sentence of §405(g).

This being said, the other side of the coin is that one might view the shift in the plaintiff's claim of disability from "liver disease" (hepatitis) when his application was filed in September 2002 to a bad back further along the line to his bad hips by the time of hearing as searching for a reason to be found disabled.

In addition, while not noted by the ALJ, there are entries in the plaintiff's medical records which one might view as inconsistent with a claim of disability since 2000, the plaintiff's claimed onset date. For instance an office note of Dr. Eppig dated September 7, 2004, states, in part:

> Patient is a 46-year-old man seen in consultation for Dr. Sahlani because of low back pain and more severe right buttock, hip, groin, and leg pain. He explains he had onset in the springtime. He has had backaches off and on for a number of years without any great problems. He had been doing a great deal of painting and was doing repeated deep squatting while painting. He was also doing knee bends for exercises and feels that he pulled or stretched something in his hip or groin. He was in extreme pain for about a month and literally lay on the couch for most of the time. He thinks he is much better at this stage. He is still dramatically uncomfortable and feels the leg is weak and somewhat smaller. He has had no left-sided pain or weakness. He has had no numbness in either leg. He denies any known major back pathology before this.

A note entered by Dr. Sahlani under date of January 5, 2005 starts with:

> HPI: This 46-year-old male comes to us with bilateral hip pain. the right greater than the left. He was doing well up until this past May. <u>He has been working as a roofer and was able to pretty much do the job and in May, he states that he was starting to do some exercises and started to have primarily right hip pain.</u> The pain in both hips is localized to the medial thigh in both groin areas. He also has some discomfort over the area of both greater trochanters. He has noticed that this has gotten worse over the past few months. He was seen by his primary care doctor. (Emphasis added.)

Quite frankly, this Court has serious misgivings as to whether the medical evidence can support the conclusion that the plaintiff is unable to perform at least sedentary work. But this Court, unlike the ALJ, is unwilling to "play doctor" and make an independent decision on this question.

It is, accordingly, recommended that the defendant's final determination be reversed, and an order of remand for further proceedings be entered pursuant to the fourth sentence of 42 U.S.C. §405(g).

                                                            s/DAVID S. PERELMAN
                                                            United States Magistrate Judge

DATE: May 19, 2008

## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).