**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **ALFRED SCHLICK,** ) | Case No.  1:07 CV 1908 |
| ) | |
| Plaintiff, ) | Judge Dan Aaron Polster |
| ) | |
| vs. ) | **AMENDED[1] MEMORANDUM OF** |
| ) | **OPINION** |
| **MICHAEL J. ASTRUE,** ) | and |
| ) | **ORDER OF REMAND** |
| Defendant. ) | |

Before the Court is the Report and Recommended Decision of Magistrate Judge David S. Perelman ("R&R") (**ECF No. 16**).  The Magistrate Judge recommends that the Court reverse the decision of the Commissioner of Social Security denying Social Security Insurance ("SSI") benefits to Plaintiff Alfred Schlick and remand the case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).  The Commissioner has filed objections, which the Court has reviewed.  (ECF No. 17.)  For the following reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** the case to the Commissioner to conduct further proceedings consistent with this opinion.

---

[1] The Court issues this Amended Memorandum of Opinion and Order of Remand to correct its mistake in the prior Memorandum of Opinion and Order of Remand (ECF No. 18) wherein the Court remanded the case to the Commissioner under the sixth sentence of 42 U.S.C. § 405(g).  The case is now properly remanded under the fourth sentence of § 405(g).

**I.**

On September 27, 2002, Alfred Schlick filed a Title XVI application for SSI benefits, alleging disability due to hepatitis C, liver disease and bladder cancer, with an onset date of April 1, 2000. Schlick's application was denied at the state agency level and on reconsideration. On August 5, 2003, he request a hearing before an Administrative Law Judge ("ALJ"). The administrative hearing was held more than a year and a half later, on April 11, 2005. The ALJ subsequently issued a decision concluding that Schlick was not "disabled" for purposes of SSI benefits because, despite numerous severe impairments, he could nonetheless perform a few sedentary jobs (telephone solicitor, credit reference clerk and cashier) identified by the vocational expert. Under the relevant Social Security Regulations, a person must be able to sit approximately 6 hours in an 8-hour workday in order to perform "sedentary" work. *Marcus v. Commissioner*, No. 96-4316, 1998 WL 199781, at *2 n.2 (6th Cir. Apr. 16, 1998) (citing SSR 83-10 (1983)).

Looking more closely at the ALJ's decision, the ALJ determined, in Finding #4, that Schlick suffered the following severe impairments: bilateral avascular necrosis/osteonecrosis of the femoral heads (hips), degenerative disc disease, hepatitis C, bladder cancer, depression, anxiety, personality disorder and substance abuse disorder. (R. 33-35.)

In Finding #5, the ALJ found that Schlick's allegations of the intensity, persistence and functionally limiting effects of his symptoms were sufficiently credible and consistent with the objective medical and other evidence to support the following limitations on his ability to work:

-2-

> Mr. Shlick[2] cannot lift or carry more than 20 pounds occasionally or 10 pounds frequently.
> Mr. Shlick cannot stand for longer than 30 minutes at a time without taking a break from standing.
> Mr. Shlick cannot walk for longer than 15 minutes at a time without taking a break from walking.
> Mr. Shlick cannot climb a ladder, rope, or scaffold.
> Mr. Shlick cannot climb stairs or ramps more than occasionally.
> Mr. Shlick cannot bend, kneel, crouch, squat, stoop, or crawl.
> Mr. Shlick cannot do any work that requires high or strict production quotas.
> Mr. Shlick cannot do any work that requires frequent changes of the work environment.

(R. 35.) With regarding to sitting, the ALJ found that Schlick "could usually sit for any length of time without a problem." (R. 36.)

In Finding #6, the ALJ noted:

> During the April 11, 2005 hearing, I considered adding the following additional limitation to the residual functional capacity stated in Finding #5 above: "Mr. Shlick cannot sit for longer than a total, in the aggregate, of 4 hours per 8-hour workday." However, on this record, I cannot make that revision, or any other, because there is <u>insufficient medical evidence in the record to explain, justify, or support any such revision, and because it is contradicted by Mr. Shlick's testimony during the April 11, 2005 hearing</u>.

(R. 36.) (emphasis added).

This last finding is critical. The vocational expert testified that, if you added the 4-hour sitting restriction to the other limitations the ALJ employed in his first hypothetical (as described in Finding #5), "that person would be precluded from the work force." (R. 437.) Thus, if the ALJ had found that Schlick could not sit more than 4 hours in an 8-hour workday, he would have been required to conclude that Schlick did not retain the residual functional capacity to perform any work.

---

[2]The ALJ misspelled Schlick's name consistently throughout his opinion.

-3-

Substantial evidence does not support the ALJ's finding that Schlick had no sitting restrictions. X-rays of Schlick taken on May 14, 2004 revealed avascular necrosis of the right hip, diminished disk height and anterior spurs at L5 and S1. (R. 279.) An MRI performed in July 2004 revealed profound degenerative disc disease at L5, with osteophytes at S-1 and L-4-5. (R. 280.) An MRI of Schlick's pelvis performed in August 2004 revealed extensive avascular necrosis in both femoral heads and bone marrow edema extending into the femoral neck. (R. 297.) Orthopedic spine surgeon Michael Eppig, M.D., who examined Schlick in September 2004, diagnosed bilateral avascular necrosis of the hips and discussed the likelihood of hip replacement surgery with Schlick. (R. 279-280.) Yoel Anouchi, M.D., another orthopedic surgeon, reported in January 2005 that an MRI showed significant avascular necrosis of both hips, observed that Schlick had bilateral greater trochanteric bursitis, and discussed hip replacement surgery with Schlick. (R. 303.) Dr. Anouchi discussed hip replacement surgery with Schlick again in March 2005, but deferred surgery due to Schlick's injuries from a recent motor vehicle accident. (R. 358.) Pharmacy records show that Schlick was prescribed Hydrocodone for his pain beginning July 2004 and continuing semi-weekly thereafter. (R. 128-132.)

Dr. Eppig completed a residual functional capacity assessment in October 2004. (R. 282-83.) Based on a diagnosis of bilateral avascular necrosis of the hips, Dr. Eppig placed the following limitations on Schlick's ability to work: Schlick could neither stand nor walk for more than 1 hour in an 8-hour workday (and could do neither for more than 15 minutes at a time); he could not sit for more than 4 hours in an 8-hour workday (sitting for no more than one hour without interruption); and he could carry no more than 5 pounds occasionally or frequently.

(R. 282.) Dr. Eppig also stated that Schlick could rarely, if ever, climb, balance, stoop, crouch, kneel or crawl; and that he needed more rest breaks during an 8-hour workday than the usual morning, noon and afternoon breaks. (R. 283.)

Schlick's primary care physician, Kamal Sahlani, M.D., completed a residual functional capacity assessment on April 8, 2005. (R. 310-11.) Based on diagnoses of avascular necrosis of the right femoral head, spondylosis L2-3 disc protrusions and back pain with radiation to the legs, Dr. Sahlani placed the following limitations on Schlick ability to work: Schlick could neither stand nor walk for more than 2 hours in an 8-hour workday (and could do neither for more than 15 minutes at a time); he could sit for no more than 4 hours in an 8-hour workday (sitting no more than 30 minutes without interruption); and he could carry no more than 10-15 pounds occasionally. (R. 310.) Dr. Sahlani also opined that Schlick needed more than the usual morning, lunch and afternoon breaks during an 8-hour workday, and that he could not climb, balance, stoop, crouch, kneel or crawl. (R. 311.)

At the hearing, Schlick, who was 47 years old at the time, testified that his bladder cancer was essentially cured by surgery years earlier, but that he still suffered from hepatitis C which left him exhausted. He testified that he was now disabled due primarily to avascular necrosis of the hips (and to a lesser degree lower back pain) which caused him near-constant pain. He testified that he took pain medication every 3 to 6 hours but that he was becoming immune to it and, in any event, he could not take it all the time due to his liver problem. He testified that he was supposed to have hip replacement surgery prior to the hearing but he was in a car accident, so the doctor wanted to wait 6 to 8 weeks to make sure there were no complications. Schlick brought his pain medication with him to the hearing and told the ALJ

that the bottle had two refills, and his doctor said that was all he was going to give him prior to his surgery. Schlick admitted to having anxiety problems, but said that his psychological problems might go away if he could rid himself of the pain in his hips through surgery. He testified that he could pick up 20 pounds but it would hurt, that he could stand 15 minutes at a time (30 if he had to), walk 15 minutes at a time (although some days were better than others), that he could not kneel, stoop, crouch, crawl, swivel, or bend and that it hurt to climb stairs. With respect to sitting, the following colloquy occurred:

> Q . . . What is the longest time you can sit? Do you have any problem sitting?
>
> A Sometimes but usually no. Like usually at home, I'm in a recliner and I recline.
>
> Q How about in a, let's say sitting on a bench, something that doesn't have a back to it?
>
> A I guess I could sit on a bench. I really don't sit on a bench, so I don't know. I have a recliner at home and I'm usually on that.
>
> Q How about a chair like the one you're sitting in now?
>
> A That's, that's fine. I'm taking pain pills and they help, but like I said, you know, I can't be taking them all the time, especially with my liver problem.

(R. 410-11.)

The ALJ thus found that Schlick could "usually sit for any length of time without a problem" based on this short, incomplete colloquy – and despite his treating physicians' opinions that he could not sit for more than 4 hours in an 8-hour workday. The question the ALJ never asked Schlick was exactly how long he could sit in a chair (not a recliner).

The Commissioner argues that "neither [Dr. Eppig nor Dr. Sahlani] offered an explanation for the [sitting] restriction." (ECF No. 17, at 5). That is not the case. The record shows that Dr. Eppig cited avascular necrosis of the hips for the sitting restriction, while Dr. Sahlani cited back pain back radiating to the legs for the restriction.

The Commissioner also argues that "the ALJ explained specifically and in detail his reasons for not accepting the physicians' opinions that Schlick could sit a maximum of four hours per day (versus the about six hours total required to do sedentary work)." (ECF No. 17, at 4-5.) The Court disagrees.

If the opinion of the treating physician as to the nature and severity of a claimant's conditions is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record, then it will be accorded controlling weight. *Rogers v. Commissioner of Social Security*, 486 F.2d 234, 242 (6th Cir. 2007) (citation omitted). When the treating physician's opinion is not controlling, the ALJ needs to determine how much weight to accord that opinion. The ALJ must consider several factors, including the frequency, nature and extent of treatment, the supportability and consistency of the physician's conclusion, and any specialization of the physician. *Id*. The ALJ must also provide reasons sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reasons for that weight. *Id*. (inner quotation omitted). The failure "to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of

substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (citation omitted).

Here, the ALJ stated with respect to the opinion of Doctors Eppig and Sahlani:

> I gave some weight to [the treating physicians'] diagnoses and to [their] opinions about Mr. Shlick's abilities to do things other than lift, carry, stand, walk or sit, or work with more than the usual morning, lunch, and afternoon breaks. With respect to Mr. Shlick's abilities to lift, carry, stand, walk, or sit, or work with more than the usual morning, lunch and afternoon breaks, I gave [the treating physicians'] opinions no weight because they are contrary to the weight of the evidence, including Mr. Shlick's testimony during the April 11, 2005 hearing.

R. 38, 39. To satisfy the *Rogers* standard, the ALJ must be far more specific than he was in giving no weight to the treating physicians' diagnoses and specific opinions regarding Schlick's residual functional capacity, given the clear documentation of avascular necrosis and degenerative disc disease supporting their opinions. A general statement that the treating physicians' opinions are "contrary to the weight of the evidence" is not adequate. The only "evidence" cited is Schlick's general answers to a few general questions the ALJ asked him.

The only basis for placing exertional limitations on Schlick's ability to stand, walk or sit was the assessment of Schlick's treating physicians, Drs. Eppig and Sahlani. The record shows that, prior to the diagnoses of avascular necrosis and degenerative disc disease, there was little to no medical evidence that Schlick had any exertional/physical limitations (i.e., limitations on Schlick's ability to stand, walk or sit). Richard C. Halas, M.A., who performed a one-time mental status evaluation of Schlick in May 2003 (when Schlick complained only of hepatitis C, fatigue, asthma and stomach problems), issued a report that did not mention any exertional limitations. (R. 233-36.) Carl Tishler, Ph.D., who conducted a psychiatric review of Schlick's medical records only in June 2003, completed a Mental Residual Functional Capacity

Assessment of Schlick that did not mention his physical ailments and contained no exertional limitations. (R. 250-52). Dr. Myung Cho, who reviewed Schlick's medical records only in November 2002, completed a Physical Residual Functional Capacity Assessment based on the diagnoses of hepatitis C, low grade bladder cancer and psoriasis – and opined that Schlick could stand, walk and/or sit about 6 hours in an 8-hour workday. (R. 189-195.) Because these assessments preceded the onset of Schlick's avascular necrosis and degenerative disc disease, any exertional limitations placed on Schlick (or lack thereof) by these medical professionals is irrelevant.

This means that the ALJ had to rely on Dr. Eppig and Sahlani's diagnoses of avascular necrosis and degenerative disc disease and on their exertional limitation opinions (along with Schlick's own testimony) when finding that Schlick could not stand longer than 30 minutes or walk longer than 15 minutes without taking a break. And the only reason to give "no weight" to the treating physicians' 4-hour sitting restriction was Schlick's own testimony at the hearing. However, Schlick's testimony during that short colloquy is not inconsistent with the treating physicians' sitting restrictions since the ALJ never asked Schlick how long he could sit upright in a chair.[3] In addition, Schlick qualified his answer about sitting by saying he had to be on pain pills all the time, which he could not continue because of his liver problems. The ALJ never probed this area to see how much pain medication Schlick was taking, whether he could continue this dosage, and what effect the medication might have on his work performance.

---

[3]Schlick's statement that he could sit in a recliner does not support the ALJ's decision, as no employer can be expected to allow an employee to sit in a recliner all day.

The Social Security Regulations make clear that, in order to perform "sedentary" work, a person must be able to sit approximately 6 of 8 hours in a normal workday. *Marcus v. Commissioner*, No. 96-4316, 1998 WL 199781, at *2 n.2 (6th Cir. Apr. 16, 1998) (citing SSR 83-10 (1983)). On this record, there is not substantial evidence supporting the ALJ's finding that Schlick could "sit for any length of time without a problem" – which is critical to the ALJ's conclusion that Schlick could perform sedentary work.

The Court also notes that, within seven months after the hearing, Schlick had both hips replaced at Hillcrest Hospital. (R. 361-393.) The Court finds that this new evidence, which is not cumulative, is material, since it is reasonably possible that it would have influenced the ALJ's decision to deny benefits, and there is good cause for not producing it at the hearing since it would have been impossible to do so. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing 42 U.S.C. § 405(g)).

Accordingly, for the foregoing reasons, the Commissioner's objections are **OVERRULED** to the extent that they are inconsistent with this opinion. The Clerk of Court is hereby directed to **REMAND** this case to the Commissioner of Social Security, pursuant to the fourth sentence of 42 U.S.C. § 405(g), for further proceedings consistent with this opinion.[4]

**IT IS SO ORDERED.**

    */s/Dan Aaron Polster    July 3, 2008*
**Dan Aaron Polster**
**United States District Judge**

---

[4] The Court need not rule on the question of whether the ALJ should have retained a medical expert to sift through the record due to the Court's rulings on the discrete issues discussed at length herein.